UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL DUNN,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

CASE NO. C16-5802-RSM-MAT

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY
APPEAL

Plaintiff Michael Dunn proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REVERSED and REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1953.[1] He left high school during 10th grade, and previously

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 1

worked as a traffic flagger, taxi driver, and retail hardware clerk. (AR 211, 379.) At the time of the first administrative hearing, he was working as a part-time courier. (AR 59-60, 241.)

Plaintiff protectively filed an application for DIB in February 2011, alleging disability beginning February 1, 2008. (AR 191-95, 246.) His application was denied at the initial level and on reconsideration, and he timely requested a hearing. (AR 114-18, 120-25.)

On January 15, 2013, ALJ John W. Rolph held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 38-73.) On January 27, 2012, the ALJ issued a decision finding Plaintiff not disabled. (AR 20-27.)

Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on July 31, 2014 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court, which granted the parties' stipulation to reverse the ALJ's decision and remand for further proceedings. (AR 594-96.)

On remand, ALJ Rudy Murgo held a hearing on April 6, 2016, and took testimony from a medical expert (ME). (AR 553-64.) After the hearing, the ALJ obtained additional VE testimony via interrogatories. (AR 713-17.) The ALJ found Plaintiff not disabled on July 20, 2016. (AR 498-509.) Plaintiff now seeks judicial review.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had worked between the alleged onset date and the date last insured (DLI), but the work activity did not rise to

the level of substantial gainful activity. (AR 501.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found that Plaintiff's obesity, type II diabetes with peripheral neuropathy, and asthma/dyspnea/chronic fatigue were severe through the DLI. (AR 501-04.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that through the DLI, Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 504.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found that through the DLI, Plaintiff was able to perform light work as defined in 20 C.F.R. §§ 404.1567(b), but could only stand/walk a combined total of 2-4 hours in an eight-hour workday. He could frequently balance, and occasionally climb ramps and stairs, stoop, kneel, and crouch. He could never climb ladders, rope, or scaffolding. He must avoid more than occasional exposure to irritants such as fumes, odors, dusts, gases, chemicals, poorly ventilated spaces, and other pulmonary irritants. He must avoid more than frequent exposure to hazards such as moving machinery and unsecured heights. (AR 505.) With that assessment, the ALJ found Plaintiff able to perform his past relevant work as a flagger trainer/supervisor as generally performed, through the DLI. (AR 508-09.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred at step two by finding his mental impairments not severe, and at step four in finding that he could perform his past work as a flagging training/supervisor. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

## Step two

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 404.1520(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.*

An impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a statement of symptoms. 20 C.F.R. § 404.1521. *See also* SSR 96-4p ("under no circumstances may the existence of an impairment be established on the basis of symptoms alone"); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (same). Nor is a diagnosis alone sufficient to

establish a severe impairment. Instead, a claimant must show his medically determinable impairments are severe. *See generally* 20 C.F.R. § 404.1521.

In this case, Plaintiff argues that the ALJ erred in finding that his mental impairments were not severe, by improperly assessing medical opinions. Dkt. 16 at 4-8. Neither Pamela Miller, Ph.D., nor David Sweet, Ph.D., both of whom examined Plaintiff, diagnosed him with a mental impairment. (*See* AR 381, 461.[2]) Although the opinions of Drs. Miller and Sweet reference some mental limitations, their failure to diagnose a medically determinable impairment permits the ALJ to exclude those limitations from the RFC assessment and does not indicate an error at step two. *See* SSR 96-8p, 1996 WL 374184, at *1 (Jul. 2, 1996) ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments[.]"). Therefore, the opinions of Drs. Miller and Sweet do not support Plaintiff's argument that the ALJ erred at step two in excluding severe mental impairments.

A State agency psychological consultant, Bill Hennings, Ph.D., did find that Plaintiff had a severe organic mental disorder (AR 93), but the ALJ rejected this portion of Dr. Hennings' opinion in light of the ME's testimony at the second administrative hearing that this impairment was not supported by the record. (AR 558-59.) This is a specific, legitimate reason to discount Dr. Hennings' opinion. As noted by the ME and the ALJ, the treatment record does not contain any reference to an organic mental disorder. (AR 558.) Inconsistency with the record is a legally

---

[2] Drs. Miller and Sweet referenced "rule-out" diagnoses, which do not establish the existence of medically determinable impairments. *See Carrasco v. Astrue*, 2011 WL 499346, at *4 (C.D. Cal. Feb. 8, 2011) (affirming an ALJ's rejection of a rule-out diagnosis, because a "'rule-out' diagnosis means there is evidence that the criteria for a diagnosis *may* be met, but more information is needed in order to rule it out").

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 5

sufficient reason to discount the opinion of a non-examining source. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record); *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record.").

Plaintiff also cites the testimony of the ME, Tracy Gordy, M.D., as evidence that he had a severe mental impairment, but this argument is not persuasive. Dr. Gordy did not identify any mental impairment that he believed Plaintiff had, and explicitly testified that he believed Plaintiff did not have any "psychiatric difficulty of any significance." (AR 558.) This testimony therefore supports the ALJ's step-two findings. Dr. Gordy did, later in the hearing, agree with Plaintiff's counsel that a restriction to 1-2-step tasks would be appropriate. (AR 563-64.) The ALJ gave great weight to Dr. Gordy's opinion that Plaintiff did not have a psychiatric disorder, but gave little weight to his opinion that Plaintiff was limited to performing 1-2-step tasks, finding that part of his testimony to be based on Plaintiff's subjective statements rather than objective evidence, and to be inconsistent with Plaintiff's semi-skilled work history. (AR 502.)

Plaintiff argues that Dr. Gordy's testimony regarding his restriction to 1-2-step tasks demonstrates that he had a severe mental impairment, but this is not persuasive because the Dr. Gordy explicitly testified that the record did not support a diagnosis of a significant mental disorder, and speculated that perhaps some of Plaintiff's mental difficulties were caused by his uncontrolled diabetes. (AR 558-60.) Thus, it does not appear that Dr. Gordy's testimony indicated the existence of a severe mental impairment, and even if it had, Plaintiff has not shown that the ALJ erred in assessing the Dr. Gordy's testimony.

Because Plaintiff has not identified a credited diagnosis of a mental impairment in the

1 medical record, and has not shown that the ALJ erred in rejecting Dr. Hennings' diagnosis, he has
2 not shown that the ALJ erred in finding at step two that he did not have any severe mental
3 impairments.

<u>Step four</u>

A person is not disabled if they are able to perform their past work. 20 C.F.R. § 404.1505. SSR 82–61 describes the tests for determining whether or not a claimant retains the capacity to perform her past relevant work. *See* 1982 WL 31387 (Jan. 1, 1982). One of the tests identifies that "where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" SSR 82–61, 1982 WL 31387, at *2. Another test is "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.*

The *Dictionary of Occupational Titles* (DOT) is the "best source for how a job is generally performed." *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir. 2001). In classifying prior work, the agency must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion. It is error for the ALJ to classify an occupation "according to the least demanding function." *Valencia v. Heckler,* 751 F.2d 1082, 1086 (9th Cir. 1985). The DOT descriptions "can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy." SSR 82–61, 1982 WL 31387, at *2 (emphasis in original). A composite job has "significant elements of two or more occupations, and as such, ha[s] no counterpart in the DOT." *Id.* Composite jobs are evaluated "according to the particular facts of each individual case." *Id.*

Plaintiff argues that the ALJ erred at step four in finding him capable of performing his

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 7

past work as a flagger trainer/supervisor, because this was not a distinct job but represented only part of his overall job as a flagger. Thus, Plaintiff argues, this job was a composite job and the ALJ erred in finding that he could perform it as generally performed, because composite jobs have no DOT counterpart and therefore cannot be performed "as generally performed." Plaintiff goes on to argue that even if he did perform some training/supervisory duties along with his flagging duties, he did not perform the training/supervisory duties long enough for that part of his job to qualify as past relevant work.

The Commissioner argues that when Plaintiff's testimony is read as a whole, it is clear that the flagger trainer/supervisor was a promotion from his job as a flagger, and therefore a separate job. Dkt. 20 at 10-11 (citing AR 51-52, 63-66). Plaintiff's testimony is consistent with the Commissioner's interpretation, because he suggested that his flagging and training tasks were separate: for example, when asked how long he performed each job, Plaintiff did not indicate that there was any overlap. (AR 63.) He described "becoming" a safety supervisor for the flagging company he was working for, which suggests that it was a separate job. (AR 51.) Plaintiff testified that he "worked [his] way up . . . as a kind of a supervisor, safety supervisor is what they called it – four, five months maybe?" (AR 64.) This testimony is consistent with a finding that Plaintiff performed a separate job as a flagger trainer/supervisor. Although, as Plaintiff notes, his written work activity report (AR 259) does not delineate between work as a flagger or as a flagger trainer/supervisor, his hearing testimony is substantial evidence to support the ALJ's finding that he performed this separate job.

Substantial evidence is lacking, however, as to the demands of the trainer/supervisor position. Plaintiff's written description of the flagger job describes only flagging duties, rather than training/supervising duties (AR 259), and at no point during the hearing did Plaintiff describe

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 8

the specific demands of the training/supervising job. Without any description of the job duties and requirements, the record lacks substantial evidence to support the ALJ's finding that Plaintiff could perform the flagger training/supervising job as generally performed,[3] nor would it be possible on this record to describe how the job was actually performed. The VE testified that the flagger training/supervising job was a light job with a specific vocational preparation (SVP) level of 3-4, but the foundation for this testimony is non-existent. (AR 66.) The only evidence that could be construed to describe the physical requirements of the job (AR 259) contemplates demands that exceed the ALJ's RFC assessment.[4] *Compare* AR 259 *with* AR 505. Without information in the record that would permit the ALJ to perform a function-by-function comparison of the flagger training/supervising job with the RFC assessment, the ALJ's step-four finding lacks the support of substantial evidence.

On remand, the ALJ should further develop the record regarding the demands of Plaintiff's past work as a flagger trainer/supervisor (including information addressing the length of time necessary to learn the job) and, if necessary, obtain supplemental VE testimony. *See* Program Operations Manual System DI 25005.020(A), *available at* https://secure.ssa.gov/poms.nsf/lnx/0425005020 (last accessed May 23, 2017) (instructing ALJs to "[e]nsure that information about the claimant's [past relevant work] is detailed enough to compare the requirements of the work with the claimant's [RFC] on a function-by-function basis").

///

---

[3] Although the ALJ found that Plaintiff could perform the flagger trainer/supervisor job as generally performed, this appears to be an error because the VE testified that this job is not defined in the DOT, and there was no other basis given for defining the job as generally performed. (AR 66.)

[4] Indeed, this was the conclusion of the VE who completed an interrogatory at the ALJ's request in April 2016. (*See* AR 713-17.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 9

## CONCLUSION

For the reasons set forth above, the Court recommends this matter should be REVERSED and REMANDED for further administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 9, 2017**.

DATED this 25th day of May, 2017.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 10